**STATE of Iowa, Appellee,**

v.

**Melvin Ray DALTON, Appellant.**

No. 02–1649.

Supreme Court of Iowa.

Jan. 22, 2004.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

· Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and

Susan Cox and Dan Voogt, Assistant County Attorneys, for appellee.

STREIT, Justice.

While a passenger in a moving pickup truck, Melvin Dalton repeatedly punched and kicked a man until he fell from the truck to his death. Dalton alleges there was insufficient evidence to support his conviction for vehicular homicide. Dalton also claims his trial counsel was ineffective for failing to challenge (1) alleged defects in the trial information and the minutes of testimony and (2) Iowa Code section 707.6A(2) (2001) as unconstitutionally vague and overbroad. Because we find there was substantial evidence to support Dalton's conviction for vehicular homicide, we reject his sufficiency-of-the-evidence claim. We also determine Dalton's trial counsel did not fail to perform an essential duty, and conclude Dalton was not denied effective assistance of counsel. We affirm his conviction.

## I. Facts and Prior Proceedings

Terry Dalton drove his brother Melvin Dalton in a pickup truck to Gerald Peek's house in Des Moines. Melvin Dalton got out of the truck and spoke with Peek on his front porch.

Dalton and Peek went back to the truck, and Dalton got in on the passenger side. The passenger door remained open while Peek stood next to the truck. Peek suddenly yelled "They're ripping me off! They're ripping me off!" The truck sped away, with Peek lodged half-inside the passenger side of the truck's cab. As Peek clung to the truck for dear life, Melvin Dalton repeatedly kicked and punched him. The driver, Terry Dalton, also punched Peek. As the truck accelerated to speeds of approximately thirty-five to forty miles per hour, Peek pleaded for help, his feet dragging along the pavement.

One of Peek's acquaintances, Tim Burnsworth, got in his car and gave chase. Burnsworth's car and the truck came into contact.

Melvin Dalton continued to kick and punch Peek until Peek fell from the truck. Witnesses found Peek on the ground approximately two blocks away from his house. He had suffered severe head injuries and was bleeding profusely. He later died as a result of the fall.

Dalton was charged by trial information with vehicular homicide, in violation of Iowa Code section 707.6A(2). The trial information alleged Dalton

> committed, aided and abetted in the commission, or jointly committed Homicide by Vehicle by unlawfully and unintentionally causing the death of Gerald Peek by driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property. (A CLASS C FELONY).

Dalton subsequently waived his right to a jury trial and stipulated to the minutes of testimony. The district court adjudged Dalton guilty, finding

> Dalton is guilty beyond a reasonable doubt of the crime of homicide by vehicle by aiding and abetting in the conduct that resulted in the death of Gerald Peek. Even though he was not operating the vehicle at the time in question, his conduct was sufficient to constitute aiding and abetting in that he was involved in the actions that resulted in Mr. Peek's separation from the vehicle while it was being operated under circumstances that the Court has and would conclude were willful and wanton and therefore reckless.

Dalton appeals, alleging there was insufficient evidence to support his conviction for vehicular homicide and he was afforded

ineffective assistance of counsel. We now consider each of these arguments, in turn.

## II. Sufficiency of the Evidence

In support of his argument that there was insufficient evidence to convict him of vehicular homicide, Dalton points out he did not drive the vehicle, nor did he aid and abet in the driving of the vehicle. He also claims there is insufficient proof he was the proximate cause of Peek's death; Burnsworth's actions, he alleges, intervened and broke the causal chain.

### A. Standard of Review

■ Our standard of review in a sufficiency of the evidence challenge is for errors at law. *State v. Spies*, 672 N.W.2d 792, 796 (Iowa 2003).

> The district court's finding of guilt is binding upon us unless we find there was not substantial evidence in the record to support such a finding. In determining whether there was substantial evidence, we review the record evidence in the light most favorable to the State. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*State v. Sutton*, 636 N.W.2d 107, 110 (Iowa 2001) (quoting *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993)). In reviewing the record evidence in the light most favorable to the State, "we must consider all the record evidence, not just the evidence supporting guilt." *Id.*

### B. Merits

The so-called "reckless driving alternative" of Iowa's vehicular homicide law states:

> A person commits a class "C" felony when the person unintentionally causes the death of another by . . .
>
> (a) Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Iowa Code § 707.6A(2)(a); *see Sutton*, 636 N.W.2d at 110 (characterizing Iowa Code § 707.6A(2)(a) as "the reckless driving alternative" of Iowa's vehicular homicide law). Iowa Code section 321.277, in turn, states "Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving[, a simple misdemeanor]." Iowa Code § 321.277.

■ As these two provisions of the Iowa Code and our cases clearly indicate, recklessness, not ordinary negligence, must be proven in order to sustain a conviction for vehicular homicide under section 707.6A(2)(a). *See Sutton*, 636 N.W.2d at 110–112 (clarifying recent cases to show the reckless driving alternative of Iowa's vehicular homicide law requires more than ordinary negligence). That is, "the State must prove the defendant engaged in conduct 'fraught with a high degree of danger,' conduct so obviously dangerous that the defendant knew or should have foreseen that harm would flow from it." *Id.* at 112 (quoting *Torres*, 495 N.W.2d at 681).

■ Of course, Melvin Dalton was not the driver of the truck, but a passenger. The State thus pled an aiding and abetting theory, upon which the district court relied in finding Dalton guilty.[1] In order to sustain his conviction for vehicular homicide

---

1. To be precise, the State alleged three theories of the case in the district court: namely, that Dalton committed, aided and abetted, or jointly committed vehicular homicide. *See State v. Black*, 282 N.W.2d 733, 735 (Iowa 1979) (State may charge accomplice as principal; to specify an accomplice theory is unnecessary); *State v. Irvin*, 334 N.W.2d 312, 315 (Iowa Ct.App.1983).

on an aiding and abetting theory, there must be substantial evidence Melvin Dalton "assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission." *Id.* (citations omitted).

■ Where a passenger, convicted of aiding and abetting vehicular homicide, challenges the sufficiency of the evidence, we follow a two-step analysis. *See id.* at 112–13 (in determining whether passenger aided and abetted vehicular homicide, court first considers whether driver acted recklessly before focusing upon passenger's conduct). First, we must determine whether the driver of the vehicle committed the underlying offense; that is, the driver must have violated Iowa Code section 707.6A(2)(*a* ). *See id.* Second, there must be sufficient evidence to show the passenger aided and abetted the driver in the commission of the crime; the State must prove "the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission." *See id.* at 112 (quoting *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000)).

On appeal, Dalton does not challenge the recklessness of the driver, nor should he; driving a truck with a man partially hanging out of its cab, let alone accelerating the truck to a velocity of thirty-five to forty miles per hour, is surely " 'fraught with a high degree of danger,' conduct so obviously dangerous that the defendant knew or should have foreseen that harm would flow from it." *Id.* (quoting *Torres*, 495 N.W.2d at 681); *see, e.g.; State v. Begey*, 672 N.W.2d 747, 749-50 (Iowa 2003) (driving car with a man on its hood, accelerating, and slamming on the brakes is reckless). The legislature has, for good reasons, outlawed such behavior, which a

civilized society cannot tolerate, no matter how ubiquitous it may appear in movies and on television.

### 1. Aiding and Abetting

■ Dalton claims, however, that there is not substantial evidence to show he *aided and abetted* the reckless driving which resulted in Peek's unintentional death. Dalton maintains there is no proof he aided and abetted his brother in the *driving* of the vehicle; driving, he alleges, is an element of the crime for which he was convicted.

The crime at issue, however, is *aiding and abetting vehicular homicide*, not *driving*. Therefore, the State need only prove Dalton "assented to or lent countenance and approval to the criminal act [vehicular homicide] either by active participation or by some manner encouraging it prior to or at the time of its commission." *Sutton*, 636 N.W.2d at 112. We have explicitly approved of vicarious liability for vehicular homicide. *State v. Satern*, 516 N.W.2d 839, 842–45 (Iowa 1994). We have also held that one need not drive a vehicle or physically assist the driver in doing so in order to actively participate or encourage a crime which requires operating a motor vehicle at the time of its commission. *See, e.g., State v. Storms*, 233 Iowa 655, 657, 10 N.W.2d 53, 54 (1943) (encouraging an intoxicated person to drive prohibited).

Viewing the evidence in the light most favorable to the State, we think a rational juror could find Dalton "actively participat[ed] or by some manner encourage[ed vehicular homicide] prior to or at the time of its commission." *Sutton*, 636 N.W.2d at 112. Even though Melvin Dalton was not driving the truck, he actively participated in the commission of the crime. Dalton joined the driver in punching Peek as they went down the road. As the truck reached speeds of thirty-five to forty miles per

hour, Dalton punched and kicked Peek until he fell from the truck to his death.

### 2. Causation

In his next assignment of error, Dalton claims the State failed to prove, beyond a reasonable doubt, that he was a proximate cause of Peek's death. Dalton contends the evidence suggests Peek's friend, Burnsworth, caused Peek's injuries by ramming the truck with his car.

Dalton's contention that Burnsworth's actions relieve him of criminal liability is erroneous, for two reasons. First, Dalton's argument is based upon a view of the facts which is supported by only one witness. The minutes of testimony, upon which Dalton was convicted, contained different and conflicting descriptions of Burnsworth's actions. Another witness described Burnsworth's car as being "knocked around" by the truck; police officers were prepared to testify "Melvin Dalton was identified [by witnesses] as striking and/or kicking Peek *until* Peek fell or was pushed from the truck into the street" (emphasis added); still other witnesses admitted there was contact between the two vehicles, but did not state or imply that the truck caused Peek's fall. A fact-finder, of course, may choose to believe one witness and not another. *State v. McPhillips,* 580 N.W.2d 748, 753 (Iowa 1998). Viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could find Burnsworth's actions did not contribute to Peek's death.

Moreover, even if we were to assume Burnsworth rammed the truck, there is no evidence *Burnsworth* was the *sole* proximate cause of Peek's death. "[F]or an intervening act to relieve a defendant of criminal responsibility for homicide, the intervening act must be the *sole* proximate cause of death." *Begey,* 672 N.W.2d at 750

(quoting *State v. Garcia,* 616 N.W.2d 594, 597 (Iowa 2000)).

In the context of a homicide case, "proximate cause" is a cause which, in a natural and continuous sequence and unbroken by any new and independent cause, produces the injury, without which the injury would not have occurred and from which a person of ordinary prudence could have reasonably foreseen that such a result, or a similar injurious result, was probable under the facts as they existed. . . . If it appears that the act of the accused was not the proximate cause of the death for which such person is being prosecuted, but that another cause intervened, *with which he or she was in no way connected, and but for which death would not have occurred,* such supervening cause is a good defense to the charge of homicide."

40 Am.Jur.2d *Homicide* §§ 12, 16, at 462, 465 (1999) (emphasis added, footnotes omitted).

We recently rejected an argument similar to Dalton's in *Begey.* In *Begey,* the defendant drove a car with a man on the hood. 672 N.W.2d at 748. The man ultimately hit the ground and died, and the defendant was convicted of vehicular homicide. *Id.* at 749. On appeal, the defendant claimed there was not sufficient evidence to show she was a proximate cause of the victim's death, because there was evidence the victim stepped off the car's hood while it was moving. *Id.* at 750. We noted, however, that there was conflicting evidence about how the victim ended up on the ground dead: contrary to the defendant's version of the events, there was substantial evidence she accelerated the car with the victim on the hood and then "slammed on the brakes, throwing [him] off the car hood." *Id..* We held the "the jury was free to accept the State's version." *Id..* Responding to the defendant's

claim that the victim's actions negated proximate cause and relieved her of criminal responsibility, we also stated, in the alternative, that

> [e]ven assuming the victim's act was an intervening cause of his death, it was not the sole proximate cause because [the defendant] played a significant role in the event. Under *Garcia* the victim's actions could not be the sole proximate cause of his death.

*Id.* (citing *Garcia*, 616 N.W.2d at 597). The same analysis applies here: just as we rejected the argument in *Begey* that the victim's own actions negated proximate cause and thereby relieved the defendant of criminal responsibility, so too must we here reject any contention the actions of a third party, Burnsworth, did the same in this case. The State sufficiently proved Dalton was a proximate cause of Peek's death. Dalton's own patently reckless conduct clearly played a significant role in Peek's death.

## III. Ineffective Assistance of Counsel

Dalton also claims his trial counsel was ineffective for failing to challenge (1) alleged defects in the trial information and the minutes of testimony and (2) Iowa Code section 707.6A(2) as unconstitutionally vague and overbroad.

### A. Scope of Review

■■■■ We review ineffective-assistance-of-counsel claims de novo. *State v. Stallings*, 658 N.W.2d 106, 108 (Iowa 2003). As we stated in *State v. Spies*,

> An ineffective assistance of counsel claim fits within an exception to the general rules of error preservation. Although such claims are, in general, preserved for post-conviction relief, where the record is adequate we will consider the merits of the claim on direct appeal.

672 N.W.2d at 798 (quotation and citations omitted). The record in this case is sufficient for resolution on direct appeal.

### B. The Merits

■■■■ In order to succeed on an ineffective-assistance-of-counsel claim, a defendant must prove each of the following two elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *Stallings*, 658 N.W.2d at 108–09 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). As we stated in *Begey*,

> To meet the first element of the *Strickland* test, counsel's performance is measured against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner. In order to satisfy the prejudice element, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."

*Begey*, 672 N.W.2d at 749 (citations omitted). Failure to prove either prong of the *Strickland* test results in failure of the defendant's ineffective-assistance-of-counsel claim. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997).

### 1. Trial Information & Minutes of Testimony

■■■ Dalton first contends he was denied effective assistance of counsel because his trial attorney failed to file a motion to dismiss after the State filed the trial information, which Dalton claims inadequately specified the crime for which he was charged. In support of his claim, Dalton alleges the trial information only references Iowa Code section 707.6A and does not specify the subsection under which

Dalton was ultimately convicted. As a result, Dalton claims he was charged with the wrong offense.

 A review of the record reveals, however, that the county attorney *did cite a subsection* in the trial information: 707.6A(2). To the extent Dalton's argument should be understood as a complaint that the trial information did not charge Dalton with the *paragraph* under which he was convicted, 707.6A(2)(*a*), this would not constitute charging Dalton with the wrong offense; the only possible complaint is that Dalton was not charged specifically enough. The Iowa Rules of Criminal Procedure, however, do not explicitly require the State to charge the defendant with a specific paragraph. Our concern is whether the defendant was "alert[ed] ... generally to the source and nature of the evidence against him." *State v. Lord,* 341 N.W.2d 741, 742 (Iowa 1983) (quoting *State v. Walker,* 281 N.W.2d 612, 614 (Iowa 1979)); *see State v. Grice,* 515 N.W.2d 20, 23 (Iowa 1994) ("The purpose of an indictment or trial information is to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense."). Employing a case-by-case analysis, we must determine whether the trial information and minutes of testimony are specific enough to afford the defendant a "full and fair statement" of a witness' expected testimony; the State "need not detail each circumstance of the testimony." *See Lord,* 341 N.W.2d at 742; *see also State v. McConnell,* 178 N.W.2d 386, 388 (Iowa 1970) (taking into consideration minutes of testimony in order to remedy supposed defect in trial information); *Grice,* 515 N.W.2d at 23 (minutes of evidence must also be considered to determine whether defendant is adequately apprised of a charge).

Taking into consideration the minutes of testimony, we hold the trial information is sufficient. When read in conjunction with the minutes of testimony, the trial information clearly indicated which paragraph was involved. Section 707.6A(2) has only two paragraphs, and the latter, 707.6A(2)(*b*), is wholly unsupported by the minutes of testimony; 707.6A(2)(*b*) categorizes as a class "C" felony vehicular homicide resulting from eluding the police. Nor is there any indication the defendant was not fully apprised of the charge against him and suffered prejudice as a result. Because any motion to dismiss for lack of specificity in the trial information would have lacked merit, Dalton's trial attorney did not fail to perform an essential duty, and thus his ineffective assistance claim must be rejected. *State v. Liddell,* 672 N.W.2d 805, 811 (Iowa 2003).

Dalton further alleges he was denied effective assistance of counsel because his trial attorney failed to object to the minutes of testimony, which he claims were inadequate to support a conviction. Because we rejected Dalton's sufficiency-of-the-evidence claim, and, in our analysis, considered only the minutes of testimony, we must necessarily reject this argument, as well, for the same reasons.

## 2. Due Process—Vagueness and Overbreadth

Dalton claims Iowa's vehicular homicide statute offends due process, because it is unconstitutionally vague and overbroad, both as applied and facially. *See* U.S. Const. amend XIV; Iowa Const. art. I, § 9 (due process guarantees in federal and state constitutions). As a consequence, he asserts his trial counsel was ineffective for failing to object on these grounds. Because we find Dalton's underlying constitutional claims lack merit, we conclude his trial attorney did not fail to perform an essential duty and reject his ineffective-

assistance claim. *See Liddell,* 672 N.W.2d at 811.

In support of his claim Iowa Code section 707.6A(2)(*a*) is unconstitutionally vague and overbroad, Dalton points out the statute contains words ("unintentionally" versus "willful and wanton") which seem to give conflicting accounts of the statute's *mens rea* requirement. *See* Iowa Code § 707.6A(2)(*a*).

> A person commits a class "C" felony when the person *unintentionally* causes the death of another by ...
>
> (*a*) Driving a motor vehicle in a reckless manner with *willful* or *wanton* disregard for the safety of persons or property, in violation of section 321.277.

*Id.* (emphasis added). Dalton further contends the statute reaches a substantial amount of protected conduct because it infringes upon Dalton's "fundamental right to travel in a vehicle."

 In assessing the merits of the arguments underlying Dalton's ineffective-assistance claim, two important legal principles must be reiterated. First, it should be noted Dalton has "the burden to negate every reasonable basis to sustain" the statute. *State v. McNeal,* 167 N.W.2d 674, 677 (Iowa 1969). Courts must "give ... any reasonable construction necessary to uphold it." *State v. Hunter,* 550 N.W.2d 460, 462 (Iowa 1996). Second, "[a] defendant charged with the violation of a statute has standing to claim the statute is unconstitutionally vague as applied to him or her. A defendant does not necessarily have standing to claim, in addition, that a statute is unconstitutional as applied to others." *Id.* at 463 (citations omitted). "[A] facial challenge is permitted if a statute reaches 'a substantial amount' of protected conduct." *Id.* at 464.

 We first consider Dalton's void-for-vagueness-as-applied claim.

Although we are ... considering only [the defendant's] vague-as-applied claim, we must still examine the statute "on its face." In doing so we consider whether [the defendant's] conduct clearly falls within the proscription of the statute under any construction. The fact the statute may be vague as applied to other factual scenarios is irrelevant to this analysis.

*Id.* at 465 (citations omitted). As applied, the statute is not vague. We have previously stated "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 463 (citing *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)). In *Knight v. Iowa District Court,* we stated:

> If the statute's, meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law or previous judicial constructions, due process is satisfied.

269 N.W.2d 430, 432 (Iowa 1978). In several cases, we have made clear the *mens rea* requirement of Iowa's vehicular homicide statute is recklessness. *See, e.g., Sutton,* 636 N.W.2d at 110–12 (citing, in part, *Torres,* 495 N.W.2d at 681) (clarifying recent cases to show the reckless driving alternative of Iowa's vehicular homicide law requires more than ordinary negligence; "the State must prove the defendant engaged in conduct 'fraught with a high degree of danger,' conduct so obviously dangerous that the defendant knew or should have foreseen that harm would flow from it"). Indeed, in *State v. Kolbet* we upheld the statute against a due process

challenge, in which the defendant contended the statute was vague because, he alleged, it failed to state a *mens rea* requirement. 638 N.W.2d 653, 662 (Iowa 2001). In rejecting Kolbet's argument, we held "the [statute's] requirement of a willful or wanton disregard for the safety of others establishes a *mens rea* element that is essential to a finding of guilt." *Id.* In the context of our cases, then, it is clear "unintentional" does not connote strict liability, but rather simply an accidental death, in the sense that it was not the defendant's aim or purpose; a finding that the defendant did not, in this sense, intend a death does not conflict with a *mens rea* requirement of recklessness. This conclusion is also supported by similar statutes and reference to the dictionary. *Ex Parte Edwards,* 816 So.2d 98, 107 (Ala.2001) (because there are few strict liability offenses, "unintentional" in the context of Alabama's vehicular homicide statute refers to "all forms of *mens rea* except that described by the word intentional, i.e. knowingly, recklessly, and negligently); Webster's Third New International Dictionary 11 (2002) (defining, in part, "accident" as "lack of intention"). Because "the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary . . . or previous judicial constructions, due process is satisfied." *Knight,* 269 N.W.2d at 432. The statute plainly requires recklessness.

■ Insofar as Dalton attempts to mount a facial challenge to the so-called "reckless driving alternative" to Iowa's vehicular homicide statute, the State correctly points out Dalton lacks standing to do so. Reckless operation of a motor vehicle resulting in the unintentional death of another human being does not impact a substantial amount of protected conduct, and therefore Dalton may not challenge the statute facially. *See Hunter,* 550 N.W.2d

at 464. "We have held that where conduct and not merely speech is involved, proof that a statue is overbroad 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *State v. Brecunier,* 564 N.W.2d 365, 369 (Iowa 1997) (quoting *State v. Todd,* 468 N.W.2d 462, 466 (Iowa 1991)). Because the statute is plainly restricted to reckless and deadly behavior, it cannot plausibly be said to interfere with "a substantial amount of protected conduct." *Hunter,* 550 N.W.2d at 464 (quotation and citations omitted). Dalton lacks standing to mount a facial challenge to the statute, and his trial attorney therefore cannot be faulted for failing to present a meritless claim. *Id.; Liddell,* 672 N.W.2d at 811.

## IV. Conclusion

We affirm Melvin Dalton's conviction for vehicular homicide. Because there was substantial evidence to support his conviction, we reject his sufficiency-of-the-evidence claim. Moreover, we reject his contentions that his trial counsel was ineffective for failing to object to the trial information, minutes of testimony, and the statute as unconstitutionally vague and overbroad, both facially and as applied. These claims lack merit, and, for this reason, Dalton's trial counsel did not fail to perform an essential duty.

**AFFIRMED.**