## IN THE COURT OF APPEALS OF IOWA

No. 13-0486
Filed May 14, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAMIEN TRAMAYNE DUKES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Michael J.

Schilling, Judge.

        A defendant appeals his conviction for assault causing serious injury.

**AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Stephan Japuntich,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Mary Triick, Assistant Attorney

General, Patrick C. Jackson, County Attorney, and Tyron Rogers, Assistant

County Attorney, for appellee.

        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Damien Dukes appeals his conviction for assault causing serious injury, alleging he was justified in punching Bryan Cannon, who was hurling racial slurs. Dukes also claims his trial counsel was ineffective for not requesting certain civil jury instructions. Because the State offered sufficient evidence to disprove Dukes's justification defense, we find no reason to disturb the jury's verdict. We also conclude counsel had no duty to request jury instructions regarding causation or comparative fault in this criminal case. Accordingly, we affirm.

**I.    Background Facts and Proceedings**

During the evening of Saturday, October 13, 2012, forty-year-old Bryan Cannon was playing darts at the Paddlewheel Lounge in Burlington. He exchanged phone calls with his former paramour Tasha Penrod. Cannon remembered Penrod asking him to repay some $300 he had borrowed from her. Penrod remembered Cannon asking her for a ride from the Paddlewheel so that he could buy crack cocaine.

Penrod testified when the conversation became heated, Cannon said she was "nothing but a cunt and a bitch." Penrod's fiancé, Damien Dukes, overheard those insults and took the phone to speak to Cannon.[1] Cannon then said: "I don't want to talk to you, nigger, put Tasha back on the phone." Dukes also recalled that Cannon "invited" him to the Paddlewheel for what Dukes believed would be a fight. According to Dukes, he hung up on Cannon. Dukes was angered by the racial slur and said his "pride" prompted him to leave

---

[1] Cannon did not remember talking to Dukes on the phone.

straightaway for the Paddlewheel with a couple of friends to find Cannon. Dukes admitted telling several people he wanted to punch Cannon in the mouth to teach him a lesson.

Penrod said Cannon called back and promised to repay fifty dollars of the money he owed to her in exchange for a ride. Penrod agreed and went with her friend, Cara Lock, to pick up Cannon. Penrod drove Cannon from the Paddlewheel back to her place. She noticed Cannon was slurring his speech and smelled of alcohol. Standing in the alley behind Penrod's house, they began to argue, and Cannon directed sexual and racial slurs towards Penrod.

Meanwhile, Dukes showed up at the Paddlewheel and could not find Cannon. When he returned to Penrod's house, he saw Penrod and Cannon arguing in alley. Dukes approached Cannon from behind. Cannon turned to face him. According to Dukes, Cannon threw his hands in the air and said, "[W]hat are you gonna do nigger?" Dukes testified Cannon "took a swing" and Dukes ducked and "swung back." Dukes punched Cannon in the mouth. Cannon fell into a seated position, continued to fall back, and hit his head on the ground.

Cannon suffered an epidural hematoma, two fractures to his cervical spine, a skull fracture, and a broken jaw. At the hospital, these injuries required emergency surgery, including the removal of part of Cannon's skull plate to treat the hematoma.

During the investigation, Dukes initially lied to police about his involvement but later admitted punching Cannon. Dukes told Detective Kenneth Zahner of the Burlington Police Department that he hit Cannon because he wanted Cannon

to "shut up" after Cannon used the racial slur.  Dukes did not tell the detective he was afraid of Cannon or that Cannon swung first.  Dukes also told friends he "put a guy named Bryan in the hospital in a coma" because he was "tired of the guy running his mouth and calling him names."

On October 26, 2012, the State charged Dukes by trial information with assault causing serious injury, in violation of Iowa Code sections 708.1 and 708.2(4) (2011), a class "D" felony.  On January 8, 2013, a jury trial commenced.  Two days later, the jury returned a verdict of guilty.  On March 11, 2013, the court sentenced Dukes to an indeterminate five-year term.  Dukes now appeals.

## II.    Standards of Review

We review challenges to the sufficiency of the evidence in criminal trials for legal error.  Iowa R. App. P. 6.907; *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  We view the evidence "in the light most favorable to the State, including all reasonable inferences that may be deduced from" it to determine whether the finding of guilt is supported by substantial evidence and should be upheld.  *Sanford*, 814 N.W.2d at 615*.*  Evidence is substantial if it would convince a rational fact-finder of the defendant's guilt beyond a reasonable doubt.  *Id.*

We engage in a de novo review of Dukes's claim his trial counsel was ineffective in not requesting certain modified civil jury instructions.  *See State v. Rohm,* 609 N.W.2d 504, 509 (Iowa 2000).  To prove ineffective assistance, Dukes must show by a preponderance of the evidence that: (1) counsel failed to perform an essential duty and (2) prejudice resulted from that failure.  *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006).  The claim fails if Dukes is unable to prove either element of this test.  *See State v. Clay*, 824 N.W.2d 488,

495 (Iowa 2012). To satisfy the duty prong, he must show that counsel failed to act as a "reasonably competent practitioner" would have. *State v. Henderson*, 804 N.W.2d 723, 725 (Iowa Ct. App. 2011). We entertain a strong presumption counsel performed within the normal range of competency. *Id.* To satisfy the prejudice prong, Dukes must show a reasonable probability that but for counsel's omission, the results of the proceeding would have been different. *See State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004).

## III. Analysis

### A. Sufficiency of the Evidence

Dukes contends the State failed to disprove his justification defense as required by the jury instructions.[2] The State carried the burden to establish not only the elements of assault causing serious injury, but also to prove Dukes was not justified in using force against Cannon. *See State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). The jury received the following uniform instruction:

> A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.
> If the State has proved any one of the following elements, the defendant was not justified:
> 1. The Defendant started or continued the incident which resulted in injury.
> 2. An alternative course of action was available to the Defendant.
> 3. The Defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.
> 4. The Defendant did not have reasonable grounds for the belief.
> 5. The force used by the defendant was unreasonable.

---

[2] Dukes does not challenge the proof of his intent to commit an assault or the serious nature of Cannon's injuries.

Dukes relies on his own testimony and that of his fiancée, Penrod, to support his justification defense. Penrod testified Cannon was calling her derogatory names. She recalled seeing Dukes approach Cannon, Cannon turn towards Dukes, Cannon taking a swing at Dukes, missing, then Dukes punching Cannon. Penrod's recollection was consistent with Dukes's testimony. Dukes testified he believed he had no choice but to punch Cannon.

A reasonable jury was free to either believe or disbelieve Dukes and Penrod. *State v. Speaks*, 576 N.W.2d 629, 632 (Iowa Ct. App. 1998). The record contained evidence that detracted from the credibility of their version of events. In the days after the incident, Dukes told several people about what he did and why he did it, including Detective Zahner. At no time did Dukes mention Cannon being the physical aggressor. Moreover, the altercation took place outside of Penrod's house, where Dukes was a frequent guest. Instead of going inside, all the testimony indicates Dukes walked toward Cannon. A reasonable jury could have decided Dukes started or continued the incident that resulted in Cannon's serious injuries and an alternative course of action was available to Dukes.

A reasonable jury also could have questioned whether Dukes had an honest and sincere belief he was in imminent danger of death or injury from Cannon or whether such a belief would have been reasonable. Dukes sought out Cannon—first at the bar and then at Penrod's house. Cannon did not possess a weapon. He was also unsteady on his feet from his level of intoxication. The jurors were free to believe the impaired Cannon did not pose a physical threat to Dukes.

Dukes told Detective Zahner he wanted to "shut up" Cannon for directing sexist and racist slurs toward him and Penrod. We agree Cannon's language was offensive. But it has long since been decided that words alone cannot justify physical violence. *See Thompson v. Mumma*, 21 Iowa 65, 66 (1866) ("Angry words are no justification for an assault and battery"); *see also State v. Thompson*, 836 N.W.2d 470, 478 (Iowa 2013) ("[W]ords alone, historically, have been insufficient to provide a factual basis for serious provocation."). Based on our review of the record in the light most favorable to the verdict, we find substantial evidence to uphold Dukes's conviction of assault causing serious injury.

## B. Ineffective Assistance of Counsel/Jury Instructions

Trial counsel has a duty to request jury instructions that define the proper scope of a criminal offense. *State v. Soboroff*, 798 N.W.2d 1, 10 (Iowa 2011). But counsel has no responsibility to propose instructions that are not supported by substantial evidence or do not accurately reflect the law. *See Shanahan*, 712 N.W.2d at 142.

Dukes faults his attorney for not proposing the district court instruct the jury on civil law theories of causation and comparative fault. Specifically, he contends counsel had a duty to ask for the following uniform instructions: Iowa Civil Jury Instruction No. 400.2 on comparing fault, Iowa Civil Jury Instruction No. 400.7 on mitigating damages, Iowa Civil Jury Instruction No. 400.8 on a party's unreasonable failure to avoid an injury, Iowa Civil Jury Instruction No. 400.9 on the unreasonable assumption of risk, and Iowa Civil Jury Instruction 700.6 on intervening cause. Dukes acknowledges the court would have had to modify

these civil jury instructions to fit the criminal context. He also argues counsel should have requested a jury instruction on proximate cause.

The State characterizes the proposed civil instructions as a "radical" departure from the accepted criminal law governing assault and contends giving such guidance to a criminal jury would have "wide reaching and devastating consequences for victims of physical violence." It also contends the instructions would "move our criminal law's understanding of a defendant's responsibility for his violent actions backward a century."

We first address Dukes's claim that his counsel breached a material duty by not requesting jury instructions on proximate cause and superseding or intervening causes. Dukes argues multiple factors contributed to Cannon's injuries, including his high blood alcohol content. Normally, Iowa courts are called to consider whether the criminal act was the factual cause of harm, or in other words, whether the harm would have occurred absent the defendant's actions. *See State v. Marti*, 290 N.W.2d 570, 585 (Iowa 1980).[3] The defense of superseding or intervening cause is available only when the alternative source of harm is the sole proximate cause of the ultimate injury suffered. *State v. Mott*, 635 N.W.2d 301, 302 (Iowa Ct. App. 2001); *see State v. Garcia*, 616 N.W.2d 594, 596-98 (Iowa 2002); *see also State v. Murray*, 515 N.W.2d 547, 551 (Iowa 1994) ("The intervention of a force which is a normal consequence of a situation

---

[3] Our supreme court has yet to address "whether the 'legal cause' aspect of the former proximate cause doctrine has any continuing viability in criminal cases after [its] decision in *Thompson v. Kaczinski*." *State v. Adams*, 810 N.W.2d at 372 n.7 (citing *Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009), which adopted the Restatement (Third) of Torts formulation of causation in civil cases and substituted the "scope of liability" inquiry for the former concepts of "proximate cause" and "legal cause").

created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about."). In this case, Cannon's injuries occurred as a normal consequence of being punched in the face by Dukes. Counsel had no duty to ask for additional causation instructions.

We next consider whether counsel had a duty to ask for comparative fault instructions in this assault prosecution. Counsel's performance may be competent even if he did not articulate a novel legal theory. *State v. McKettrick*, 480 N.W.2d 52, 58 (Iowa 1992). Initially, we note that provocative language and insults do not constitute a defense to acts of violence in a civil action any more than they do in a criminal prosecution. *See Ireland v. Elliott*, 5 Iowa 478, 480 (1858); *see also* Iowa Criminal Jury Instruction 400.11 (Jury Instruction 25) ("No matter how insulting the words used by Bryan Cannon, they will not in and of themselves justify the use of force by [Dukes].").

Furthermore, a crime victim is not a party to the prosecution. *Teggatz v. Ringleb*, 610 N.W.2d 527, 531 (Iowa 2000). Accordingly, a civil plaintiff's duty to mitigate damages or to exercise reasonable care should not be superimposed on the victim in an assault prosecution. Finally, "unreasonable assumption of the risk" is not a viable defense in criminal cases. *See, e.g.*, *Oatis v. State*, 726 So. 2d 1230, 1234 (Miss. Ct. App. 1998) (observing "[f]or an officer to place himself in a position in which he knows he may be hurt is not a criminal law 'assumption of the risk' that prevents simple assault from occurring against the law enforcement officer"); *State v. Simmons*, 580 P.2d 564, 566 (Or. Ct. App. 1978)

(noting general rule that tort concept of assumption of the risk is not a defense in a criminal prosecution).

The civil jury instructions identified on appeal do not accurately convey legal concepts necessary to the jury's deliberations. Accordingly, trial counsel had no duty to ask the court submit them to the jurors. We reject Dukes's claim of ineffective assistance of counsel.

**AFFIRMED.**