**IN THE COURT OF APPEALS OF IOWA**

No. 15-1506
Filed May 11, 2016

**IN THE INTEREST OF A.D.,**
**Minor child,**

**A.D., Minor Child,**
Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A.D. appeals from the order adjudicating him delinquent. **AFFIRMED.**

Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A.D. appeals from the order adjudicating him delinquent for his role in an attack on J.M. that occurred when A.D. was fifteen years old. The juvenile court determined the evidence showed A.D. committed an act that would have constituted second-degree robbery if he were an adult. A.D. challenges this finding, alleging there is insufficient evidence to show he actively participated in, or encouraged, the attack.

We review delinquency proceedings de novo to determine whether the State proved beyond a reasonable doubt the child committed the delinquent act. *See In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). Though we are not bound by the juvenile court's factual findings, we give them weight, especially those concerning witness credibility. *Id.*

A robbery occurs when a person, having the intent to commit a theft, commits an assault upon another to assist or further the commission of the intended theft. *See* Iowa Code § 711.1(1)(a) (2015). Any robbery that does not involve inflicting or intending to inflict a serious injury, or the use of a dangerous weapon, is classified as second-degree robbery. *See id.* §§ 711.2-.3. A person may be found to have committed the act under an aiding-and-abetting theory if the person assents to, or lends countenance and approval to, the act, either through active participation or by encouraging it in some way before or during its commission. *See State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). The intent element of the crime is satisfied if the person participates with either the requisite intent "or with knowledge the principal possesses the required intent." *Id.* Therefore, A.D. can be found to have committed a delinquent act if the evidence

shows beyond a reasonable doubt that he participated in or encouraged an assault on J.M., before or during its commission, with the intent of committing a theft or knowing another intended to commit a theft.

There is no dispute that the acts that occurred on the night in question would have constituted second-degree robbery. As J.M. walked home, six individuals began to follow him, one of whom J.M. heard asking, "Are we going to do it?" Someone in the group ran up behind J.M. and kicked him, knocking him to the ground. Members of the group began attacking J.M. by kicking him repeatedly in the head and face. During the attack, one of the six attackers stated: "We want what's in your pockets." The attack only stopped after J.M. yelled "help" and a light from a nearby house turned on, causing the group members to flee from the scene.

A.D. admits he was one of the six individuals who followed J.M., but he argues there is insufficient evidence to show he actively participated in or encouraged the attack. He claims that shortly before or during the attack, he broke away from the group to call a friend and was not present during the attack. In support of his testimony, A.D. cites the testimony of Je.H., whose testimony confirmed A.D.'s version of events. His testimony was not without equivocation, however. When asked if A.D. laid a hand on J.M. at any time, Je.H. replied: "Not that I know of." Je.H. admitted that his vantage point may have impeded his ability to observe the attack; he was not wearing his glasses, and he was not paying attention to everyone. Therefore, it was "possible" that A.D. participated in the attack without Je.H.'s knowledge.

There is sufficient evidence to support a finding A.D. committed a delinquent act. Ja.H., another member of the group, contradicted A.D.'s testimony. Although Ja.H. recalled A.D. was talking on the phone, he was unable to say whether A.D. broke off from the group at any point. Ja.H. did testify, however, that A.D. was present during, and participated in, the attack. Although A.D. argues Ja.H.'s testimony is "improbable," witness credibility and the weight to be given to the testimony were matters for the juvenile court to decide. *See State v. Dalton*, 674 N.W.2d 111, 118 (Iowa 2004) (noting a fact-finder is free to accept or reject witness testimony); *State v. Gill*, 143 N.W.2d 331, 334 (Iowa 1966) ("The weight and credit to be given the testimony including the probative value of the corroboration of an admitted accomplice was for the jury and not for us."). Furthermore, the surveillance footage from the area corroborates Ja.H.'s testimony. *See State v. Palmer*, 569 N.W.2d 614, 616 (Iowa Ct. App. 1997) (noting a small amount of evidence is all that is required to corroborate accomplice testimony). The attack began after the group followed J.M. across 19th Street, and the surveillance footage shows A.D. was still with the group as they crossed 19th Street. Additionally, the evidence supports a finding that A.D. participated in, or lent assent to, the group's plan to assault J.M. with the intent of committing a theft by accompanying the group in following and chasing J.M. *See State v. Hearn*, 797 N.W.2d 577, 581 (Iowa 2011) ("Evidence of a defendant's "'*presence, companionship, and conduct before and after the offense is committed*'" may be enough from which to infer a defendant's participation in the crime.'" (citations omitted)). Because sufficient evidence supports the finding that A.D. participated in or encouraged an assault upon

another with the intent to assist in the commission of a theft, or knowing another intended to commit a theft, we affirm the order adjudicating A.D. delinquent.

**AFFIRMED.**