# IN THE COURT OF APPEALS OF IOWA

No. 18-0323
Filed November 27, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARLON DERELL HARRIS, JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Marlon Harris Jr. appeals his convictions of first-degree robbery and second-degree theft. **AFFIRMED.**

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

The State charged Marlon Harris Jr. with several crimes arising from the robbery of a Waterloo liquor store and the subsequent theft of a truck and some of its contents. Following a bench trial, the district court found Harris guilty of first-degree robbery, second-degree theft, and possession of a controlled substance. On appeal, Harris challenges the sufficiency of the evidence supporting the robbery and theft charges.

The district court required the State to prove the following elements of first-degree robbery:

> 1. That on or about the 8th day of January, 2017, the defendant had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
>     a. Committed an assault upon another,
>     b. Threatened another with or purposefully put another in fear of immediate serious injury, or
>     c. Threatened to commit immediately any forcible felony.
> 3. The defendant was armed with a dangerous weapon.

Harris does not challenge the evidence supporting the first two elements. He focuses on the third element—being armed with a dangerous weapon. When the State did not produce the firearm used in the robbery, Harris offered and had admitted a BB gun, which he testified was the gun seen on video footage of the liquor store. He argues the "BB gun was designed for target practice and little else" and "[t]here is no evidence in the record to show that a BB gun of this nature was designed to kill or injure a person or an animal."

A "dangerous weapon" is statutorily defined as:

> [A]ny instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable

of inflicting death upon a human being when used in the manner for which it was designed, except a bow and arrow when possessed and used for hunting or any other lawful purpose. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length, or any portable device or weapon directing an electric current, impulse, wave, or beam that produces a high-voltage pulse designed to immobilize a person.

Iowa Code § 702.7 (2017). The district court found that the gun used in the robbery of the liquor store was a firearm:

> The State admitted into evidence State's exhibit A which was a CD of the video cameras in place at [the] liquor store. Camera number 3 as shown on State's exhibit A at 2:13 shows the item which defendant removed from his pants at [the] liquor store. Although similar to the BB gun admitted as defendant's exhibit 1, the item shown in State's exhibit A does not have a black space on the top silver portion of the object. This discrepancy and defendant's prior felony conviction and convictions for offenses involving truthfulness cause the court to find the testimony of the store employees to be more believable. The court therefore determines that the State has proven beyond a reasonable doubt that defendant did have in his possession during the time he was present in [the] liquor store a firearm.

The court's findings are supported by substantial evidence. *See State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). One of the liquor store employees had a clear view of the gun from "[o]ne f[oo]t away," "[l]ike he was right there." He could see "the trigger, the handle, and some of the stock part." He described the gun as "metal" and having "a black handle and silver top." He believed the gun was real. Another store employee also saw the gun. She was familiar with guns and testified Harris' firearm did not appear to be a BB gun or pellet gun. She

described it as a black metal semi-automatic, with a flat-tipped hammer, "almost like a 9 millimeter."

The district court reasonably credited the employees' testimony over Harris's description of the gun. *State v. Dalton*, 674 N.W.2d 111, 118 (Iowa 2004) ("A fact-finder, of course, may choose to believe one witness and not another."). But, even if the gun was a BB gun, there was substantial evidence from which the district court could have found it was a dangerous weapon. *See State v. Dallen*, 452 N.W.2d 398, 398 (Iowa 1990) (concluding the State presented sufficient evidence to permit the jury to find a BB gun was a dangerous weapon); *State v. Johnson*, No. 05-0558, 2006 WL 1279119, at *2–3 (Iowa Ct. App. May 10, 2006) (citing cases and noting question of whether BB gun is a dangerous weapon was a question for the fact-finder).

Moving to the theft charge, the district court required the State to prove the following elements of second-degree theft:

> 1. On or about the 8th day of January, 2017, the defendant took possession or control of property of Cole Siegle.
> 2. The defendant did so with the intent to deprive Cole Siegle of the property.
> 3. The value of the property taken . . . exceeds $1000 but does not exceed $10,000.

The court found that, after the incident at the liquor store, Harris went to a convenience store and "drove off in a pickup truck owned by Cole Siegle." The truck contained "a toolbox, a laptop computer in bag, a blue socket kit, a cellphone and several other tools" as well as another "large toolbox also filled with tools." An officer saw a person later identified as Harris standing in the doorway of an

apartment building with "a large object in his hands." As she approached, the man dropped what he was holding and ran. The court further found the following facts:

> Located inside the apartment building were several items identified by Cole Siegle as having been located within the cab of his truck when it was taken from [the convenience store]. In the parking lot, Siegle also identified his truck with those tools which had been in the back of the truck still in their original position. Siegle testified that the value of all the tools located in his truck as approximately $20,000 but that the value of those tools which had been removed from the cab of his truck included a toolbox valued at approximately $3000, a laptop computer and bag valued at $800, a cellphone valued at $700, a key fob valued at $170, miscellaneous tools valued at between $300 and $400.

Harris admits taking the truck but contends, "[N]o one found [him] with tools or any items from the truck." To the contrary, the officer who saw the man drop an object outside the apartment building later identified the man as Harris. The dropped object was later identified as property taken from Siegle's truck. Again, the court's findings are supported by substantial evidence.

We affirm Harris' judgment and sentence for first-degree robbery and second-degree theft.

**AFFIRMED.**