# IN THE COURT OF APPEALS OF IOWA

No. 23-1670
Filed December 4, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANGEL GUERRERO GARCIA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, John C. Nelson, Judge.

        The defendant appeals his convictions following a jury trial. **AFFIRMED.**

        Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

After investigating two complaints made on the same day involving inappropriate conduct with a child and an assault on a man mowing a yard, Angel Guerrero Garcia was charged and later found guilty by a jury of indecent contact with a child, in violation of Iowa Code section 709.12 (2023); possession of a controlled substance, in violation of section 124.401(5); and assault causing bodily injury or mental illness, in violation of section 708.2. Garcia appeals two counts of his three-count conviction, claiming there is insufficient evidence (1) to satisfy the elements of indecent contact with a child and (2) to support an assault causing bodily injury or mental illness. We affirm the convictions.

**I. Background Facts and Proceedings.**

On July 5, a group of children traveled to a nearby park to set off fireworks. While at the park, an individual, later identified as Garcia, approached the children and struck up a conversation. Garcia, a twenty-six-year-old man, decided to sit down next to thirteen-year-old K.G. on a park bench. The interaction quickly turned sour. Garcia asked the child to be his "girlfriend." K.G. declined, saying "no, because I'm only thirteen." Garcia countered "the age of consent in Mexico is thirteen." The child, growing increasingly uncomfortable, responded "We're not in Mexico."

At that point, Garcia wrapped his hands around the child's lower waist, such that his hands were near her buttocks, and kissed K.G. on the cheek. The child reported being "terrified" and made a speedy exit. As the children were leaving, Garcia "came behind [the child] and touched [the child's] butt." She and her friends

started running to her friend's nearby home to get away. K.G. later described Garcia as acting "a little weird."

Later that day, Michael Bakkers was mowing his grandmother's lawn and saw Garcia emerge from a vacant lot. A shoeless, rambling Garcia started to walk towards Bakkers, prompting Bakkers to call the police because Garcia appeared "quite erratic and violent for no reason." Bakkers had never seen Garcia before this day. Yet, Garcia approached Bakkers, saying, "Hey, Adam. We good, dog? We good, dog? Whatcha doing?" before starting to "swing" at him. Bakkers attempted to lure Garcia away from his wife and child as Garcia swung at him and threw rocks, twigs, and an empty soda bottle at him. All the while, Garcia continued to accuse Bakkers of killing his parents, who, according to Garcia, were Presidents of the United States. At some point during the interaction, as he tried to run from Garcia, Bakkers tripped and fell to the ground. According to Bakkers's wife, Garcia continued to punch Bakkers in the head and stomp on him as he was on the ground.

As the police arrived, the assault was no longer in progress, but Garcia was still outside Bakkers's home. Officers questioned Garcia. Garcia first gave an incorrect name and birth date. Around this same time, K.G.'s mother called the police, reporting the earlier incident in the park. The police investigated both complaints, culminating in the arrest of Garcia. In the squad car, en route to jail, Garcia dumped contents from his pocket into the backseat. At booking, Garcia dropped a baggie at the foot of the officer. The baggie's contents were field tested at the jail, testing positive for methamphetamine, and sent to the Iowa Division of

Criminal Investigation (DCI) Criminalistics Laboratory for further testing. DCI confirmed the contents of the baggie were, in fact, methamphetamine.

The matter proceeded to trial, where Garcia was found guilty of indecent contact with a child, possession of a controlled substance, and assault causing bodily injury or mental illness. Garcia appeals two of his three convictions on claims of insufficient evidence: indecent contact with a child and assault causing bodily injury or mental illness.

## II. Standard of Review.

We review challenges to the sufficiency of the evidence for errors at law. *State v. Dalton*, 674 N.W.2d 111, 116 (Iowa 2004).

## III. Discussion.

When assessing sufficiency of the evidence challenges, evidence must be assessed "in the light most favorable to the State." *See State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). The non-moving party is entitled to "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted). As a result, "[e]vidence is sufficient to support a conviction if, viewing it in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (citation omitted). If sufficient evidence from the record exists to support a conviction, we are bound by the jury's verdict. *State v. Mong*, 988 N.W.2d 305, 312 (Iowa 2023).

### A. Indecent Contact with a Child.

Garcia argues there is insufficient record evidence to convict him of indecent contact with a child. For the jury to properly find indecent contact with a

child, the State must prove that an individual of eighteen years of age or older committed any of the enumerated acts in the statute against a child, who is not their spouse, "with or without the child's consent, for the purpose of arousing or satisfying the sexual desires of either of them." Iowa Code § 709.12(1). Of the enumerated acts in section 709.12, the State focuses on section 709.12(1)(b): "Touch the clothing covering the immediate area of the inner thigh, groin, buttock, anus, or breast of the child." Garcia first denies touching K.G.'s buttocks, but argues, even if the jury accepted the child's testimony that he did, there was no proof that the touching was for "the purpose of arousing or satisfying the sexual desire" of Garcia or of the child.

Our role is to determine whether the verdict is supported by substantial evidence. Here, the jury accepted K.G.'s version of what happened. While Garcia argues that the details of K.G.'s testimony are sparce, we do not weigh witness credibility when reviewing the sufficiency of the evidence. *See State v. Slaughter,* 3 N.W.3d 540, 550 (Iowa 2024) (noting that when reviewing the sufficiency of the evidence, "it is not within the province of our court 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury'" (citation omitted). Instead, the ultimate question is whether the evidence supports the finding actually made. *Id.* Here, after viewing the evidence in a light most favorable to the State, K.G.'s testimony about how Garcia approached her, what he said, the unwanted kiss to her cheek and his move to touch her buttocks, is substantial evidence to support the conviction. Testimony at trial, by itself, may be sufficient evidence to ground a conviction. *See State v. Donahue*, 957 N.W.2d 1, 10–11

(Iowa 2021) ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction."); *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive.").

Next, as to Garcia's challenge that the State failed to produce sufficient evidence to show the touching was for the purpose of sexual arousal, we look to the totality of Garcia's behavior. Intent is seldom shown by direct evidence; instead, "[t]he requisite intent to arouse or gratify the sexual desire of any person can be inferred from an accused's conduct, remarks, and all surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008). Much of Garcia's behavior towards K.G. was sexually charged. Sitting close to the child, wrapping his arms around the child's lower waist near her buttocks, asking the child to be his girlfriend, suggesting the child was "of age" in another country, kissing the child on the cheek, and, finally, touching the child's buttocks as she tried to flee, constitute substantial evidence for a reasonable juror to find Garcia touched K.G.'s buttock to arouse or satisfy his or the child's sexual desires.

Viewing the evidence in a light most favorable to the State, we find substantial evidence to support the conviction for indecent contact with a child. Because we find substantial evidence, we are bound by the jury verdict and affirm the conviction.

**B. Assault Causing Bodily Injury or Mental Illness.**

Garcia argues the cuts and scrapes sustained by Bakkers were a result of Bakkers tripping and falling and there is no evidence that Garcia made physical contact with Bakkers. Thus, he contends the "only substantial evidence that exists

is of simple assault." Iowa Code section 708.1(2)(a) defines assault to include "Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act." Under section 708.2(2), a person who commits an assault "who causes bodily injury or mental illness" is guilty of a serious misdemeanor, while any other assault, except as otherwise provided under other paragraphs in section 708.2, is a simple misdemeanor. *See* Iowa Code § 708.2(7). Garcia was charged with a serious misdemeanor. So, we then look to whether the evidence supports a showing of bodily injury or mental illness that was caused by Garcia's act that was intended to cause Bakkers pain or injury.

At trial, Bakkers testified Garcia threw rocks, sticks, and an empty two-liter soda bottle at him as Bakkers was leading Garcia away from his pregnant wife and small child. During this time, Garcia repeatedly accused Bakkers of killing Garcia's parents, who, according to him, were Presidents of the United States. In addition, Bakkers's wife testified that Garcia repeatedly punched Bakkers in the head and stomped on him, including when Bakkers was on the ground. The photographs admitted as exhibits at trial showed cuts and scrapes to Bakkers's leg and foot sustained in the attack. Finally, Bakkers also described an increase in anxiety or nervousness since the assault, especially when he visits his grandmother's home. He reported an uneasiness and feeling the need to scope out the street because he "[doesn't] know what I'm going to run into now." As Bakkers testified the increase in anxiety is the "real lasting thing."

Contrary to Garcia's claim that he made no physical contact with Bakkers, his exchange with his counsel at trial suggests otherwise:

Q. Okay. Well, you heard testimony that you—you assaulted Mr. Bakkers . . . ? A. Mm-hmm.

Q. Do you recall that? A. Yeah I pushed him—pushed him to the ground.

Q. I'm sorry? A. Yeah. I pushed him to the ground. I threw the Sprite bottle at him that I had on me, and I threw it at him.

Evaluating the record before us, we find substantial evidence existed for a fact finder to determine Garcia committed an assault causing bodily injury or mental illness as defined by Iowa Code sections 708.1(2) and 708.2(2).

## IV. Conclusion

For the reasons detailed above, we affirm the convictions.

**AFFIRMED.**