**STATE of Iowa, Plaintiff–Appellee,**

v.

**Gary Lee STEWART, Defendant–Appellant.**

**No. 03–1637.**

Court of Appeals of Iowa.

Oct. 14, 2004.

---

Linda Del Gallo, State Appellate Defender, and Robert Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Michael Short, County Attorney, and Gordon Liles, Assistant County Attorney, for appellee.

Considered by HUITINK, P.J., and HECHT and EISENHAUER, JJ.

HECHT, J.

Gary Stewart appeals from the judgment and conviction entered following a jury trial on the charges of eluding or attempting to elude a pursuing law enforcement vehicle while participating in a felony, third-degree burglary, and second-degree theft, in violation of Iowa Code sections 321.279(1), 321.279(3)(a), 713.1, 713.7(a), 714.1 and 714.2(2) (2003). He maintains he received ineffective assistance of counsel. We affirm.

## I. Background Facts and Proceedings.

In the early morning hours of May 12, 2003, restaurant manager Timothy Rader spotted a vehicle parked near a neighboring Honda dealership. The back hatch of the vehicle was open and a large box was leaning on it. Rader was suspicious and went inside to call police. Rader then returned outside and observed an individual standing behind the vehicle loading an all terrain vehicle (ATV), which had previously been in the box, into the back of the vehicle. Rader also observed the individual kneeling down as police arrived and began investigating with spotlights. The person Rader observed then entered the vehicle and quickly drove off, leaving the ATV behind.

Police officers pursued the vehicle on a thirty-mile chase at speeds reaching 120 miles per hour before it stopped and its driver fled on foot. Officers quickly captured the fleeing individual, whom they later identified as Gary Stewart.

Based on this incident, the State charged Stewart with eluding or attempting to elude a pursuing law enforcement vehicle while participating in a felony, third-degree burglary, and second-degree theft. Stewart filed a notice of insanity and diminished responsibility defenses. Following a trial, the jury found Stewart guilty as charged. The court sentenced him to indeterminate terms of imprisonment not to exceed five years on each count. It ordered that the eluding and burglary sentences be served concurrently, but that the theft sentence would be consecutive to the first two. It also ordered Stewart to pay fines of $750 on each count. Stewart appeals, contending counsel provided ineffective assistance.

## II. Scope and Standards of Review.

Our review of an allegation of ineffective assistance of counsel is de novo. *State v. Bergmann*, 600 N.W.2d 311, 313 (Iowa 1999). The defendant bears the burden of demonstrating ineffective assistance of counsel. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A defendant receives ineffective assistance of counsel when (1) the defense attorney fails in an essential duty and (2) prejudice results. *Strickland v. Washington*, 466 U.S. 668,

687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). An ineffective assistance of counsel claim may be disposed of if the defendant fails to prove either prong. *State v. Cook,* 565 N.W.2d 611, 614 (Iowa 1997).

Ordinarily we preserve claims of ineffective assistance of counsel raised on direct appeal for postconviction proceedings to allow full development of the facts surrounding counsel's conduct. *State v. Atley,* 564 N.W.2d 817, 833 (Iowa 1997). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). We will resolve ineffective assistance of counsel claims on direct appeal when the record is adequate to decide the issue. *State v. Arne,* 579 N.W.2d 326, 329 (Iowa 1998).

### III. Ineffective Assistance.

Stewart contends his trial counsel was ineffective for failing to object on three occasions when the prosecutor either insinuated Stewart was lying, or asked Stewart to comment on whether he claimed Timothy Rader had lied in his testimony. Stewart also claims his trial counsel was ineffective in failing to object to the prosecutor's attempt to impeach a defense expert by emphasizing the expert had primarily testified on behalf on criminal defendants in the past. We find the record is adequate to address these claims.

#### A. Insinuation of Lying.

In cross-examining Stewart, the prosecutor asked him the following questions, and Stewart gave the following responses:

Q. Would he [Timothy Rader] have any motive, that you know of, to come in and lie about what he saw you do, crouching in front of the—your Blazer to avoid the police? A. I just don't think that's the way it happened. I don't know.

. . . .

Q. So if he wanted to, it would have been awful easy for him to come and lie and say, yeah, I saw you as the one in front of the Blazer, but he didn't did he? A. No.

. . . .

Q. I just want some semblance of the truth from you, Mr. Stewart. That's the only reason I'm asking these questions.

Our supreme court held in *State v. Graves* that asking the defendant whether another witness is lying is incompatible with the duties of a prosecutor, and is therefore "clearly improper." *State v. Graves,* 668 N.W.2d 860, 874 (Iowa 2003). Likewise, the court determined it is improper for a prosecutor to call a defendant a liar. *Id.* at 876. Thus, we conclude counsel did breach a duty in failing to object to this line of questioning. However, we must still turn to the prejudice prong of Stewart's claim to determine whether the prosecutor's improper questioning deprived him of a fair trial. *See id.*

In examining the prejudice prong in *Graves,* the supreme court stated:

[W]e must determine whether there is a reasonable probability the prosecutor's misconduct prejudiced, inflamed or misled the jurors so as to prompt them to convict the defendant for reasons other than the evidence introduced at trial and the law as contained in the court's instructions. In making this determination we consider the factors noted previ-

ously: (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct.

*Id.* at 877.

■ Here, there were only three inappropriate questions from the prosecutor. In the context of a trial with multiple witnesses, we cannot say this was either "severe" or "pervasive." Moreover the State's evidence at trial was overwhelming on the question whether Stewart was the individual who attempted to steal the ATV and later led police on a lengthy high-speed chase. The only truly controverted issue was whether the affirmative defenses of insanity or diminished responsibility had been established. The subject of the improper cross-examination was focused on the issue of the identity of the individual who committed the crimes, an issue not seriously in dispute. The improper questioning did not go to the issues of insanity and diminished responsibility. Consequently, we conclude the prosecutor's misconduct did not generate *Strickland* prejudice in this case.

Accordingly, although we strongly condemn the action of this prosecutor who pursued a line of clearly inappropriate questions, we hold Stewart cannot establish the required prejudice prong and reject this claim of ineffective assistance of counsel.

**B. Expert Witness Cross–Examination.**

■ The following exchange occurred during cross-examination between the prosecutor and defense witness Dr. Frank Gersh, a psychiatrist who evaluated Stewart:

Q. Have you ever evaluated a person in preparation for a criminal case as this at the request of the State of Iowa? A. Yes, I did.

Q. When did you do that last? A. That would have been years ago, in about 1986.

Q. Would I be correct that the vast majority of the time you have evaluated persons for a criminal case and possible testimony, in the vast majority of matters, that's been on behalf of the defendant? A. Yes, it has....

Stewart argues his trial counsel was ineffective in failing to object to this allegedly improper questioning.

In *State v. Werts*, 677 N.W.2d 734, 738–39 (Iowa 2004), our supreme court "condemned" the prosecutor's act of injecting the issue of the fact a defendant's expert witness associated with defense lawyers and represented and testified for perpetrators charged with killing children. The court characterized the prosecutor's questioning as "demeaning" and intended simply to make the witness "look bad" in front of the jury. *Id.* at 738.

■ We believe the type of questioning that occurred here is distinguishable from that in *Werts*. In that case, the prosecutor repeatedly noted the witness associated with a "bunch of defense lawyers" and regularly testified on behalf of "people who were charged with killing children." *Werts*, 677 N.W.2d at 738. In contrast, here the prosecutor posed a series of questions to Dr. Gersh in a straight-forward, non-inflammatory manner. Generally, the scope of cross-examination may be extend-

ed to areas touching on a "witness's credibility, bias, ill will, hostility or interest in the case." *See State v. Cuevas*, 288 N.W.2d 525, 530 (Iowa 1980) (citing *State v. Musack*, 254 Iowa 104, 109–10, 116 N.W.2d 523, 526 (1962)). We believe that is the situation here. The questions posed to Dr. Gersh cannot be characterized as demeaning. Because we conclude the questions posed to Dr. Gersh addressed a subject that was appropriate for cross-examination, and were posed in a non-demeaning, non-inflammatory manner, we conclude trial counsel did not breach a duty when he failed to object to them.

## IV. Conclusion.

Having concluded Stewart was not prejudiced by counsels failure to object to the prosecutors improper implication that Stewart was lying, and that counsel did not breach a duty in failing to object to the questioning of the defendants expert witness, we affirm the convictions.

**AFFIRMED.**