# IN THE COURT OF APPEALS OF IOWA

No. 21-0380
Filed May 11, 2022


**JAMES CAIN HARRIS,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____


Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.


Applicant appeals from the denial of his application for post-conviction relief.

**AFFIRMED.**


Marti D. Nerenstone, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


Heard by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Following his 2014 conviction[1] for a 2003 murder, James Harris applied for post-conviction relief (PCR), which was denied. Directing our attention to the trial and appeal in the underlying criminal case, he now argues that: (1) his trial counsel was ineffective for not moving to suppress the butterfly knife found in a car he was riding in a decade after the killing because there was insufficient evidence to prove it was his; (2) the court abused its discretion in failing to appoint substitute trial counsel; (3) his counsel was ineffective in waiving his right to a speedy trial; (4) his counsel was ineffective for waiving reporting of jury selection and opening statements; (5) prosecutorial misconduct occurred during closing arguments when the prosecutor made statements about the butterfly knife; (6) his counsel was ineffective for failing to object to the no-inference-of-guilt instruction given to the jury; (7) the PCR court erred by not presuming prejudice after Harris proved his counsel breached an essential duty by not ensuring Harris was present for a question submitted by the jury; (8) his counsel's inefficacy led to cumulative error; (9) there were internal inconsistencies in the PCR court's order; and (10) his counsel's inefficacy led to structural error. As to his ineffective-assistance claims, we find no instance where his counsel both breached an essential duty and that breach led to prejudice. Harris did not preserve a structural-error challenge or suffer from cumulative error. He also did not obtain a ruling from the PCR court

---

[1] Harris did appeal this conviction and a panel of our court upheld the conviction. *See State v. Harris*, No. 14-1393, 2015 WL 7019022 (Iowa Ct. App. Nov. 12, 2015). Procedendo issued on July 28, 2016.

on his challenge to the trial court's denial of his request for substitute counsel, so we do not consider this challenge. Accordingly, we affirm the PCR court's denial.

**Facts**

On July 31, 2003, there was a disturbance outside of an apartment in Council Bluffs. Residents of the apartment heard someone pounding on the door and yelling. One voice in particular repeatedly called out, "Stephanie, you fucking bitch, open the damn door." These residents included two children who witnessed the incident through the windows. Other individuals inside the apartment called 911.

When police arrived, they found a woman stabbed multiple times and near death. She ultimately died from her injuries. Police found a bloody five-dollar bill and shoe prints not belonging to the decedent or anyone else on the scene. They determined neither the blood on the bill nor the shoe prints were the decedent's, and neither belonged to anyone else at the scene. Police investigated the case unsuccessfully for months before it went cold.

However, in 2006, police received a lead from Harris's brother, Anthony Francis (also known as Cortez). Francis called Lieutenant Dan Flores—who testified at trial that Francis sounded distraught—and informed Lieutenant Flores he had information about a murder. Lieutenant Flores met with Francis and took him to the police station for an interview, assisted by Detective John Clark. Through the duration of the interview, Francis's demeanor seemed distressed. Detective Clark passed what Francis said on to Captain, then Detective, Tom Weddum, who had been at the original scene shortly after the murder occurred years prior. With the new information, Captain Weddum refocused the

investigation on Harris. Captain Weddum believed Harris had ties to Stephanie Strange, who he went to interview. Strange, Harris's past paramour, explained that she had been with the decedent on the night of her murder. At the end of the interview, Captain Weddum obtained enough information to support a nontestimonial court order to go retrieve Harris's DNA, which did not match that found at the scene of the murder. The case fell cold once more.

Detective Brandon Danielson was assigned to the case in 2013. A DNA match had been found for the bloody five-dollar bill from the scene. The DNA match belonged to an incarcerated person who had not been a person of interest or even connected with the case up until that point. That suspect denied any knowledge of the murder. Detective Danielson decided to re-interview Strange; her statements were consistent with what she had told Captain Weddum in 2006. Ultimately, an arrest warrant went out for Harris.

Harris was arrested in March 2014 and charged with first-degree murder in violation of Iowa Code sections 707.1 and 707.2(1) and (2) (2003), to which he pled not guilty. Officer Travis Jarzynka testified that, during the arrest a butterfly knife with a black handle was found in the car's center console, as well as two knives on Harris's person. Harris was a passenger in the car, but it did not belong to him. After being taken to the station, Harris was interviewed for several hours. At first, he denied knowing the decedent. But as the interview continued, he described buying marijuana from the decedent and going back to her apartment. Harris also admitted being next to the decedent when she was stabbed, but he claimed an unknown man did the stabbing. His description of the evening

substantiated what Strange had previously told the detectives and matched specific details about the crime scene.

Armed with the information from the interview, the case proceeded toward trial. Around one month before the trial, Harris sent the court a letter seeking substitute counsel. The court held a hearing and gave Harris the opportunity to explain his concerns. Given the limited time before trial, the severity of the charge, and Harris's wish not to waive his right to a speedy trial, the court denied the motion; it also noted, though, that Harris's counsel was well-equipped to move forward.

As Harris's trial date grew closer, his counsel determined he needed more time to prepare. To accommodate, counsel filed a motion for continuance and a limited waiver of Harris's rights to a speedy trial, affixed with Harris's signature. This limited waiver allowed for an additional month before trial was required.

The trial eventually began in June. Before trial, and again at the beginning of trial, the court asked Harris if he wanted to have the jury selection and opening statements reported. Harris's attorney stated that would not be necessary.

In the midst of the trial, Strange took to the witness stand and testified about the statements she had given and what she saw in 2003. In her version, she confirmed she and Harris had been at the bar, as was the decedent, and that Harris was wearing blue sweatpants and a blue tank top she had given him. Harris told Strange he planned to rob the decedent, who he believed had drugs on her. He left with the decedent despite Strange's protests. When Strange picked Harris up hours later, he was in different clothing and had specks of blood on his arms and face. They went to a hotel, and Harris paid for a room—despite not having money

earlier in the day. While he took a shower, he told her to wash off his butterfly knife, and she cleaned off the "red stuff." The State showed Strange a picture of the butterfly knife found in the car at Harris's arrest, and she testified it looked like the one she remembered cleaning years earlier. On cross-examination, Harris pushed her on this point: would it make sense to get rid of the clothes he wore but not the murder weapon?

When the State rested, Harris moved for both a directed verdict and a judgment of acquittal. The court denied both. Harris and his counsel had a discussion off-record; when they returned, they rested his case. The court ensured Harris was aware that, in resting, he was waiving his opportunity to testify or present further evidence. Harris assured the court he was aware and agreed with the strategy. The State made a point to confirm that Harris was aware of his right to testify; Harris again stated he understood but chose not to take the stand. When both sides had rested, Harris renewed both his earlier motion for a directed verdict and motion for a judgment of acquittal, which the court again denied.

Before instructions were given to the jury, the court discussed the instructions with the parties. Both parties agreed to the proposed instructions, including jury instruction 16, which stated: "In this case, the Defendant has decided not to testify. The Defendant is not required to testify, and no inference of guilty shall be drawn from that fact. The burden of proof remains upon the State to prove the guilt of the Defendant." Harris's counsel stated that he reviewed the instructions with Harris, Harris had no objections or exceptions to them, and the parties moved on to presenting their respective closing arguments.

In its closing statement, the State followed up on Harris's question to Strange about ridding himself of bloodied clothing but keeping the murder weapon. The prosecutor told the jury:

> I've cobbled together the pictures that we've got, but you can get an idea of what kind of knife we're talking about through [photographs of the knife and the knife itself]. But this is the weapon we're talking about here that was found on him at the time of his arrest that [Strange] identified as consistent with—certainly not going to suggest that it is, but it is consistent with.
>
> Now, the defense counsel indicated, so are you testifying that they were smart enough to get rid of the clothing but they weren't smart enough to get rid of the knife? Fairly good question. I'll submit a couple of things to you about that. Number one, sometimes, folks that kill people want a trophy. Perhaps this was a trophy.
>
> I will also submit to you that probably any one of you has within the past week or two eaten a steak, and I'm going to suggest that you probably cut into that steak, and you probably got some bloody juice on it and threw your knife into the dishwasher and got it out, and you're probably perfectly comfortable eating with that utensil again in the very near [future]. Why? Because knives are washable. It is a lot tougher to get blood out of a shirt than to wash it off of a knife blade. So you don't have to be a genius to say I don't have to get rid of the knife. I run it under hot water and I do that long enough that there's no blood, no DNA, and I get to keep my cool knife that I like.

In the midst of jury deliberations, the jury submitted a question seeking statements or depositions from some of the witnesses. The court and the attorneys met to discuss the question, but Harris was not brought back to the courtroom. The court simply wrote back "no."

After deliberating, the jury found Harris guilty of first-degree murder, and he was sentenced to life without parole. He appealed his conviction, which a panel of this court upheld. *See Harris*, 2015 WL 7019022, at *8. Harris then filed for PCR in 2016, which was denied in 2021. He timely appealed.

**Discussion.**

We typically review a PCR action for errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But, when the review implicates a constitutional issue, such as ineffective assistance of counsel, our review is de novo. *Id.*

As Harris raises a number of ineffective-assistance-of-counsel claims, we provide the framework we use to address them here. To prove that counsel was ineffective, Harris must satisfy a two-prong test by showing both that his counsel breached an essential duty and that the breach resulted in prejudice. *See State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Failing to prove either prong is fatal to the claim. *See State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004).

To prove there was a breach, the applicant is required to show "his counsel's performance fell 'below the standard demanded of a reasonably competent attorney.'" *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018) (citation omitted). There is a presumption that counsel acted competently, and the applicant can only overcome this presumption by "prov[ing] his counsel's performance 'fell below the normal range of competency.'" *Id.* (citation omitted). "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (alteration in original) (internal quotation marks and citations omitted).

Turning to the prejudice prong, the applicant is required to prove that their counsel's error was serious enough to deprive them of a fair trial. *Id.* The error cannot have simply conceivably influenced the proceeding's outcome. *Id.* "Rather, the effect must be affirmatively proven by a showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citation omitted). As Harris challenges his criminal conviction, "the appropriate question to ask is 'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (citation omitted). We address both the claims preserved for this appeal and those not preserved because they were not raised and ruled on below. *See Goode v. State,* 920 N.W.2d 520, 526–27 (Iowa 2018) (carving out an exception to the error-preservation rules for claims of ineffective assistance of trial counsel that were first raised on appeal—not to the district court—"when the appellate record is adequate").

**1. Ineffective Assistance of Counsel: Motion to Suppress the Knife.**

Harris's first claim is that his trial counsel was ineffective because counsel did not file a motion to suppress the butterfly knife found in the center console of the car he was riding in when arrested. Specifically, Harris believes his counsel should have challenged whether there was enough evidence to prove the knife belonged to Harris.

The State argues that Harris has not preserved error on this issue, and we agree. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Lamasters,* 821 N.W.2d at 862 (citation omitted). To the PCR court,

Harris argued that the search was illegal, not that there was insufficient proof the knife was his. The PCR court's ruling reflects this and contemplates only the search's validity.[2] Because Harris neither raised the issue below nor received a ruling on the issue, we need not address it here.

## 2. Request for Substitute Counsel.

Harris next claims that the trial court should have granted his pro se motion seeking substitute counsel. As our court has previously held:

> A defendant has a right to counsel at all critical stages of the criminal process. No defendant, however, has an absolute right to be represented by a particular counsel. The grounds to justify the appointment of substitute counsel include a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the defendant and counsel. The court must balance the defendant's right to counsel of his [or her] choice and the public's interest in the prompt and efficient administration of justice.

*State v. Mott*, 759 N.W.2d 140, 148–49 (Iowa Ct. App. 2008) (internal citations omitted).

Of the grounds laid out in *Mott*, the only one Harris identifies for our consideration is a breakdown in communication. And it is true that when a trial court receives a request for substitute counsel, it has a duty to inquire into the issue. *State v. Lopez*, 633 N.W.2d 774, 780 (Iowa 2001). But the State argues that we need not determine if the trial court's inquiry into Harris's request was sufficient because, as the PCR court did not rule on the issue, error has not been preserved. Again, the State is correct.[3] While Harris testified to the issue at his

---

[2] Harris also filed a rule 1.904 motion to enlarge the court's findings after the order came out. The motion pointed out the faults in the search but made no mention of the knife's provenance.

[3] "[W]e have consistently held that any claim not properly raised on direct appeal may not be litigated in a [PCR] action unless sufficient reason or cause is shown

PCR hearing, the trial court's inquiry and ultimate decision not to appoint him new counsel were not reviewed by the PCR court, and Harris did not mention the request in his 1.904 motion to enlarge. As the PCR court did not rule on the issue, error was not preserved for our review on appeal. *See Lamasters*, 821 N.W.2d at 862. We address it no further.

### 3. Ineffective Assistance of Trial Counsel: Speedy Trial Waiver.

Harris next challenges the waiver of his right to a speedy trial. He concedes that his counsel waived this right on May 28, 2014, [4] and that counsel has the ability to do this on the defendant's behalf. *See State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981) (reinforcing counsel's ability to waive speedy trial rights with continuance motions). Still, he argues that because he did not have counsel he was confident in, in part because the court told him he was too close to trial to be appointed new counsel, "[his] rights were trampled upon."

Before the PCR court, Harris argued that his trial counsel was ineffective for waiving his right to a speedy trial when the upcoming trial was the basis for not allowing him new counsel. Yet, Harris admits that his counsel could waive speedy trial on his behalf, and Harris testified he signed the partial waiver of speedy trial

---

for not previously raising the claim, and actual prejudice result from the claim of error." *Everett v. State*, 789 N.W.2d 151, 156 (Iowa 2010); *see also* Iowa Code § 822.8 (2016). Harris does not attempt to justify why this issue was not raised on direct appeal, and he did not bring this claim under the guise of ineffective assistance of appellate counsel. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("We have found the ineffective assistance of appellate counsel to constitute a sufficient reason for failing to raise the issue . . . on direct appeal."). He cannot raise this claim for the first time in PCR.

[4] Harris's testimony confirmed that he remembered discussing the form with counsel and signing it, though he denies that he understood what rights he was giving up.

after discussion and agreement with his trial counsel. Because Harris is making this same argument to our court, we note he has not established how any breach of his right to a speedy trial was prejudicial.[5] *See Dalton*, 674 N.W.2d at 119 (noting that failure to satisfy either the breach or prejudice prong is fatal to a claim of ineffective assistance of counsel). We cannot, then, find his counsel was ineffective in this limited waiver of Harris's right to a speedy trial.

**4. Ineffective Assistance of Trial Counsel: Failure to Report Jury Selection and Opening Statements.**

Harris makes the claim his trial attorneys were ineffective for failing to have jury selection and opening statements reported but offers no specifics about how any error occurred during those parts of the trial. The State contends that we need not reach the merits as the issue was not preserved. We agree. To preserve error for appeal, the party must raise the issue and receive a ruling from the PCR court.[6] *See Lamasters*, 821 N.W.2d at 862. And while Harris made brief mention in the PCR trial of the lack of reporting of voir dire, he did so in the process of making a fair cross-section claim, which he does not challenge on appeal. So, the PCR

---

[5] The PCR court, in its order, spoke to the lack of prejudice:
> Harris failed to demonstrate how he was prejudiced by the limited waiver. . . . There is nothing to indicate that the result of the trial would have been different if Harris had waived his speedy trial rights in open court after a colloquy with the judge. The court finds that this allegation is without merit.

[6] Harris could have bypassed our error-preservation rules by raising this issue through the framework of whether PCR counsel was ineffective in failing to adequately raise or obtain a ruling on the issue, but Harris did not do so. *See, e.g.*, *Harryman v. State*, No. 14-1334, 2015 WL 4935640, at *5 (Iowa Ct. App. Aug. 19, 2015) ("Nevertheless, an applicant may raise an ineffective-assistance-of-PCR-counsel claim on appeal from the denial of a PCR application. (citing *Dunbar v. State*, 515 N.W.2d 12, 15–16 (Iowa 1994))).

court ruled only on the fair cross-section claim.[7] Further, the PCR court never received arguments about opening statements that Harris now raises on appeal.[8] As neither claim was properly preserved, we discuss them no further.

**5. Ineffective Assistance of Trial Counsel: Prosecutorial Misconduct.**

Harris next argues that his case was tainted by the prosecutor's misconduct in front of the jury and that his trial counsel was ineffective for not objecting to the conduct during the trial. He pinpoints misconduct when the prosecutor (1) elicited testimony from Strange that the butterfly knife found in the car during Harris's arrest was the same kind she saw him with in 2003 and (2) claimed, during closing arguments, the butterfly knife found in the car was a "trophy" from the murder.[9] Harris argues that portraying the butterfly knife as the murder weapon was not supported by evidence and went against the purpose of its admission into evidence, and his counsel should have objected in both instances.

---

[7] Harris also made no effort to raise the recording issue in his rule 1.904 motion to enlarge. *See Lamasters*, 821 N.W.2d at 863 (requiring a party to file a rule 1.904 motion requesting a ruling to preserve error when the court fails to rule on the issue in its initial order).

[8] Even if the argument were preserved, Harris neglected to establish any specific error that occurred during the jury selection or opening statements or how he was prejudiced; therefore, his challenge must fail. *See State v. Oetken*, 613 N.W.2d 679, 689 (Iowa 2000) (finding counsel was not ineffective when the defendant did not "assert any specific error occurred during the course of those proceedings, or that he was prejudiced as a result of his trial counsel's representation").

[9] Harris also claims his counsel was ineffective for not objecting when the State "improperly shifted the burden [of proof]" to Harris during closing statements. This claim was not raised to the PCR court nor addressed in Harris's rule 1.904 motion to enlarge, and so we do not consider the issue further. *See Lamasters*, 821 N.W.2d at 862 (requiring the issue to be both raised and ruled upon in order to be preserved).

When the State offered the knives collected at Harris's arrest into evidence,[10] including the butterfly knife, the following discussion occurred outside the presence of the jury:

> PROSECUTOR: . . . [T]he butterfly knife that is depicted in 55C, D, and E, as well as an actual exhibit 56, I'm not saying that's not the murder weapon in this case, Your Honor. It is consistent with the description that [Strange] gave, and I think you're going to find when she takes the stand, . . . Strange, I don't know she's actually been shown it, but she certainly will be in court, and she said it was a black-handled butterfly knife that was used—that he stabbed [the decedent] with, and it's a black-handled butterfly knife that's in his possession when he was arrested. So I think at the very least, it is certainly relevant. And I think that's probative. We're not going to submit that we have any sort of DNA test on it. It is 11 years later, but certainly any prejudicial effect of him arguing that he possesses these knives when he admits it throughout his statement we think is minimal. It certainly has a significant amount of probative value about his enjoyment—
> THE COURT: So you intend to link up this butterfly knife? I will confess, I was concerned about that getting in if we were just going to say person stabbed, and oh by the way he has a knife we can't link up to the case even remotely, but apparently there's evidence in here that I wasn't particularly aware of. One is through a witness who will identify a knife that matches the description of this knife, and the other is his statement where he repeatedly refers to having these knives.
> . . . .
> . . . [There is a] difference between admissibility and weight and sufficiency. It sounds to me, [defense counsel], like you've got some pretty good weight and sufficiency arguments, but I don't think it keeps the evidence out. I might change my mind if somebody says this is the murder weapon, because if you don't link that up real clearly, I'm probably not going to let you go that far; okay? All right.

As explained above, to prove Harris received ineffective assistance of counsel, he must establish both that his counsel breached an essential duty and that the breach resulted in prejudice. *See State v. Graves*, 668 N.W.2d 860, 869

---

[10] The butterfly knife's admission into evidence was challenged and upheld by a panel of this court in 2015. *Harris*, 2015 WL 7019022, at *7.

(Iowa 2003). Here, Harris claims this breach occurred when counsel failed to object to prosecutorial misconduct as the prosecutor flouted the limitations placed on the admission of the knife into evidence. Prosecutorial misconduct violates a defendant's due process rights when there is both misconduct and prejudice results from the misconduct. *State v. Leedom*, 938 N.W.2d 177, 192 (Iowa 2020). Prosecutorial misconduct has been broadly defined, as "trial conduct of a prosecutor in a criminal case that is claimed to deprive the defendant of a fair trial." *State v. Schlitter*, 881 N.W.2d 380, 393 (Iowa 2016), *abrogated on other grounds by State v. Crawford*, ___ N.W.2d ___, ___ 2022 WL 815299, at *5, *9 (Iowa 2022). Misconduct can include "questioning witnesses about others' deceit, distorting testimony, making unsupported statements during closing argument, stating the defendant lied during testimony, diverting the jury from deciding the case based on the evidence, making other inflammatory or prejudicial statements about the defendant, and more." *Id.*

Still, "[a] prosecutor's misconduct does not warrant relief unless the conduct was so 'prejudicial as to deprive the defendant of a fair trial.'" *State v. Sempek*, No. 10-0586, 2011 WL 5396362, at *6 (Iowa Ct. App. Nov. 9, 2011) (quoting *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989)); *see also State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006) ("The obvious threat addressed by *Graves* and other of our cases is the possibility that a jury might convict the defendant for reasons other than those found in the evidence. . . . [M]isconduct occurs when the prosecutor seeks [to tarnish the defendant's credibility or boost that of the State's witnesses] through unnecessary and over inflammatory means that go outside the record or threaten to improperly incite the passions of the jury."). "The party claiming

prejudice bears the burden of establishing it." *Anderson*, 448 N.W.2d at 33. In considering prejudice, we look at a number of factors including "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 869 (internal citations omitted).

Looking first at Strange's statement about the knife she remembered from 2003 matching the knife found at the time of Harris's arrest, Harris argues that eliciting this testimony was prosecutorial misconduct because it could be taken to imply the knife in the car was the murder weapon. But, considering the directions the court gave when it admitted the knife into evidence, the State was well within its bounds to ask Strange to compare the knife in evidence to the knife she remembered from the night of the killing. Turning next to the prosecutor's statements at closing arguments, we note that the statements in the closing argument did come closer to saying the butterfly knife found in the car was the murder weapon, but it still did not reach the level of prosecutorial misconduct. The State made clear that the knife was *consistent* with the murder weapon rather than declaring it *was* the murder weapon; this inference found support in Strange's testimony—offering the "link" required by the trial court. Moreover, it was defense counsel's question of Strange, surrounding why Harris would get rid of his clothing but keep his knife, that opened the door to the prosecutor's inference about the knife. *See Leedom*, 938 N.W.2d at 194 ("Counsel can draw inferences from the evidence in closing arguments, but they cannot misstate or create the record.").

Because the State stayed in the lane constructed by the trial court, Harris's counsel breached no duty by failing to object to the question. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015) ("Further, where a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless."). Without this breach, Harris's ineffective-assistance-of-counsel claim must fail. *See Dalton*, 674 N.W.2d at 119 ("Failure to prove either prong of the *Strickland* test results in failure of the defendant's ineffective-assistance-of-counsel claim.").

**6. Ineffective Assistance of Trial Counsel: No-Inference-of-Guilt Instruction.**

Harris also challenges a jury instruction that was given to the jury in his criminal trial—one providing no inference of guilt could be drawn from Harris's choice not to testify. In his PCR trial brief, he argued that this was ineffective assistance of counsel. Deposition testimony of his trial counsel was offered as evidence to the PCR court; one attorney admitted she had not discussed the instruction with Harris, while the other could not remember specifically addressing that instruction. In *State v. Kimball*, 176 N.W.2d 864, 869 (Iowa 1970), our supreme court discussed such an instruction:

> We must recognize, however, that the [no-inference-of-guilt] instruction is a comment on defendant's failure to testify even though it is supposedly for defendant's benefit and is designed to keep the jury from speculating on the reasons for his failure to take the stand and drawing improper inferences therefrom. There are those who believe the instruction is more harmful than helpful and regardless of how favorably to the accused the instruction may be worded it may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds.
> Because of the divergent opinions in this sensitive area . . . we believe it is advisable for us to take a definitive position on this issue. We now hold that such instruction should not be given in any future trial unless it is requested by defendant, and that it will

be considered error if it is given, absent such request, in any trial started after the date this opinion is filed.

The PCR court acknowledged this precedent, but it did not decide whether such a breach of duty had occurred in Harris's case.[11] Instead, considering the claim through the ineffective-assistance-of-counsel framework,[12] it pivoted to the prejudice prong that Harris was still required to prove. *See State v. Stewart*, 691 N.W.2d 747, 749 (Iowa 2004) ("The defendant bears the burden of demonstrating ineffective assistance of counsel.").

The PCR court found no such showing. As we sit here today, Harris has yet to argue specific prejudice and instead hangs his hat on a reversible error claim. *See Lamasters*, 821 N.W.2d at 866 ("Even if [the applicant] can show his counsel made a professionally unreasonable error, the judgment shall not be set aside unless it can be shown the error had an effect on the judgment. A showing that the error 'conceivably could have influenced the outcome' of the proceeding is not enough." (citations omitted)). Harris offered no analysis as to how omitting the instruction would have helped his case. As Harris has not proved he was prejudiced by his trial counsel's choice to proceed with the jury instruction, we cannot find counsel was ineffective. *See Ledezma*, 626 N.W.2d at 142 ("If the

---

[11] We acknowledge, as the State points out, that it is not clear a breach occurred. *See Gibler v. State*, No. 15-2222, 2017 WL 5124485, at *4–5 (Iowa Ct. App. Feb. 8, 2017) ("Gibler's counsel clearly indicated he had no objections to the final set of instructions, which had included the no-inference instruction as to Gibler. It is obvious counsel knew the no-inference instruction was included and had made the decision to have it submitted. . . . To have the no-inference instruction included was a trial strategy of counsel. Miscalculated trial strategies do not rise to the level of ineffective assistance.").

[12] *Kimball* was a case on direct appeal, not an application for PCR. Harris drew no issue with the instruction in his direct appeal.

claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently.").

**7.  Ineffective Assistance of Trial Counsel: Jury Question.**

Next, Harris asserts the PCR court erred in its analysis over the July 1, 2014 jury question.  Harris argued to the PCR court that his trial counsel was ineffective for failing to ensure he was present for discussion of the jury question in the midst of deliberations.  *See Everett*, 789 N.W.2d at 159 ("We conclude counsel had a duty in this instance to ensure his client's statutory and constitutional rights were protected.").  *But see id.* at 160 (leaving open the question of whether failing to ensure the defendant is present "would always constitute a breach of an essential duty").  While the PCR court agreed with Harris that his counsel breached an essential duty here, it also found Harris had not proved prejudice and so had not established his counsel was ineffective.  Harris now argues that, because the court found his counsel had breached an essential duty, it erred in not finding prejudice.

Harris is mistaken in believing this breach created some presumption of prejudice.  To prove his counsel was ineffective, Harris must establish both that counsel breached an essential duty and that the breach resulted in prejudice. *Kuhse*, 937 N.W.2d at 628.  "The defendant bears the burden of demonstrating ineffective assistance of counsel," *Stewart*, 691 N.W.2d at 749, and failure to prove either prong is fatal, *Dalton*, 674 N.W.2d at 119.  Harris must do more than just say he was prejudiced.  To establish prejudice, Harris must show "the probability of a different result [had he been present for the jury question] is 'sufficient to undermine confidence in the outcome.'"  *Everett*, 789 N.W.2d at 158 (citation omitted).  The PCR court was not wrong to require Harris to prove both prongs,

and on appeal he presents only conclusory statements that do not establish prejudice. *See State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002) (finding conclusory statements were insufficient to prove prejudice). Harris did not, and does not now, prove the necessary prejudice to establish his counsel was ineffective, so his claim must fail.

**8. Cumulative Error.**

Harris asserts that when combined, the cumulative effect of counsels' alleged errors amount to *Strickland* prejudice.[13]

> If the defendant raises one or more claims of ineffective assistance of counsel, and the court analyzes the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty, the court can only dismiss the post-conviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice.

*State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). We employ this analysis here as we disposed of more than one claim of ineffective assistance on prejudice grounds. Still, even considering these charges collectively, we do not find *Strickland*-level prejudice has occurred. *See Strickland*, 466 U.S. at 696 (establishing that prejudice is shown when the defendant shows "the decision reached would reasonably likely have been different absent the errors").

**9. PCR Court's Opinion.**

Harris next questions the consistency of the PCR court's opinion, largely reiterating earlier arguments we have already resolved. Harris points first to the

---

[13] Harris also puts forward two of purported errors that the court disposed of on prejudice below, as well as another he did not raise. As these arguments are underdeveloped with no supporting authority, we consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

PCR court's decision regarding prosecutorial misconduct, which we have already upheld and discuss no further. Next, he argues that the PCR court ought not to have placed the burden of proving prejudice on him when considering the use of the no-inference-of-guilt jury instruction or answering the jury question. The PCR court was correct to rule Harris was responsible for this burden. *See Stewart*, 691 N.W.2d at 749 ("The defendant bears the burden of demonstrating ineffective assistance of counsel."). As we find no error with the issues Harris raises as inconsistent, we can provide him no relief.

**10. Structural Error.**

Harris's final contention[14] is that his counsel was so ineffective as to constitute structural error. "Structural errors are not merely errors in a legal proceeding, but errors 'affecting the framework within which the trial proceeds.'" *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (citation omitted). There are limited instances where Iowa courts have recognized structural error in the past when:

> (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.*

---

[14] After raising a number of specific instances he believes constituted ineffective assistance by trial counsel, Harris also makes a broad, general claim at the end of his brief that his trial counsel was ineffective. As we have already discussed cumulative error and his individual ineffective-assistance allegations above when preserved, we will not re-hash them here.

We do not need to determine if Harris falls into these narrow parameters, because he never raised the issue to the PCR court nor received a ruling on the matter; therefore, he has not preserved error. *See Lamasters*, 821 N.W.2d at 862 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)); *see also Riddle v. State*, No. 20-0536, 2021 WL 2708937, at *2 (Iowa Ct. App. June 30, 2021) (noting that structural-error claims regarding trial counsel on appeal from PCR are subject to the rules of error preservation). Therefore, his claim of structural error cannot proceed.

**Conclusion.**

For all the reasons discussed above, we affirm the PCR court's denial of Harris's application for post-conviction relief.

**AFFIRMED.**